**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-13-0116-001-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Elizabeth Szilagyi, | |
| Defendant. | |

Defendant Elizabeth Szilagyi has filed a motion to review the order of detention entered by Magistrate Judge John Boyle. Doc. 61. The Court held a hearing on April 26, 2016. For the following reasons, the Court will affirm Judge Boyle's detention order.

**I.    Background.**

On February 4, 2016, Defendant Elizabeth Szilagyi was temporarily extradited from Switzerland to the District of Arizona to face prosecution in this case. Defendant is a 69 year old woman who is a naturalized citizen of the United States and holds dual citizenship in Hungary. Defendant has held herself out as a financial advisor who assists clients to obtain funding for international transactions. She has no criminal history in the United States.

On August 14, 2011, Defendant left the United States for the stated purpose of assisting her ill mother who resides in Hungary. Docs. 36-2 at 8, 36-3 at 4. On September 15, 2011, Defendant returned to the United States. Doc. 36-2 at 8. In October of 2011, Ms. Szilagyi traveled to Zurich and secured an apartment there. Doc. 35 at 3.

Defendant asserts that she stayed in Zurich in part because of her mother's health, and also for "personal and business reasons." *Id.* at 4. Defendant obtained a Hungarian passport in 2012 and a Hungarian driver's license in 2013. Doc. 36-2 at 10.

Defendant resided in Zurich from October 2011 until her arrest by Swiss authorities, on Swiss charges, in 2014. Letters submitted to Judge Boyle indicate that her Swiss custody began in October or November of 2014. Doc. 35-1 at 1; Defendant's Ex. 5. Neither party has described the nature of the Swiss charges against Defendant, but it appears that she was awaiting trial until her extradition to the United States. The Supplemental Declaration of Elizabeth Kiingi, a State Department Legal Advisor, asserts that the United States made an October 1, 2014 inquiry about Defendant's possible extradition from Switzerland. In response, "[t]he Government of Switzerland . . . informed the United States that Ms. Szilagyi was being detained in Switzerland on Swiss-related charges and that her surrender to the United States would be postponed until the end of her detention on those charges." Doc. 65-1, ¶ 3. When the United States requested on January 29, 2016, that Defendant be temporarily surrendered to the United States, and confirmed to Swiss authorities that "Ms. Szilagyi would be kept in custody during the pendency of the U.S. criminal proceedings" and "returned to Switzerland at the conclusion of those proceedings," Switzerland "temporarily surrendered Ms. Szilagyi to the United States[.]" *Id.*, ¶¶ 3-4. Ms. Kiingi states "that the time Ms. Szilagyi spends in U.S. custody will 'count exclusively' towards U.S. proceedings." Doc. 36-1 at 4. The prosecutor at the April 26, 2016 hearing stated that Swiss authorities have requested that Ms. Szilagyi be returned to Switzerland when this case concludes.

**II.  Legal Standard.**

The Court reviews Judge Boyle's decision *de novo. See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must "review the evidence before the magistrate" and any additional evidence submitted by the parties, "and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193. Under the Bail Reform Act, Defendant must be detained if the

Court finds that no condition or combination of conditions will reasonably assure the safety of the community or her appearance at trial. 18 U.S.C. § 3142(e). The government must prove Defendant is a danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). It must prove she is a flight risk by a preponderance of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

**III.    Analysis.**

The Bail Reform Act identifies four general factors to be considered in deciding whether a defendant should be detained: the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g). The Court will address each factor in turn.

**A.    Nature and Circumstance of the Offense Charged.**

The Superseding Indictment charges Defendant with 35 counts of Wire Fraud. The indictment alleges that between 2004 and 2013 Defendant engaged in wire fraud transactions exceeding $433,000. Doc. 14.

A Declaration of FBI Special Agent Kyle C. Armstrong describes some of the facts underlying the charges. Doc. 36-2. It identifies several victims who received assurances from Defendant that she had access to hundreds of millions of dollars in foreign funds that could be used to fund the victims' business activities. Defendant persuaded the victims to pay her hundreds of thousands of dollars in fees to gain access to these foreign funds, but none of the victims received the funding Defendant promised. Defendant represented to the victims that she had high-level contacts within the Hungarian government and access to London banks and gold bullion from China. Her alleged scheme included meetings with bank officials in Lichtenstein and travel to China, Malaysia, and Hong Kong. *Id.* Thus, the charges in this case involve not only large sums of money and the appearance of sophisticated international business transactions, but also contacts with and travel to several foreign countries.

/ / /

**B.   Weight of the Evidence Against Defendant.**

The weight of the evidence against a defendant is the least important of the factors listed in § 3142(g), but it nonetheless must be considered. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008). The evidence in this case appears to be substantial. Special Agent Armstrong's declaration describes interviews with a number of victims who were induced by Defendant to provide large sums of money in fees, and yet who never received the funding Defendant promised. Doc. 36-2. Defendant provides no evidence to rebut Special Agent Armstrong's assertions.

**C.   History and Characteristics of Defendant.**

Several facts are relevant. Defendant is a dual citizen of the United States and Hungary. She owns no property in Arizona, having lost her Phoenix-area home to foreclosure several years ago. Defendant has no employment in Arizona. Although she has a daughter who apparently lives in Arizona, the daughter has no contact with Defendant. Defendant does have a son who lives in California, works as a law enforcement officer, and would be willing to have Defendant live with him.

Defendant left the United States in 2011 and has lived in Europe since then. She has claimed that she stayed in Europe to care for her aging mother in Hungary, but she did not live in Hungary. She lived in Zurich, Switzerland. Defendant's passports also show travel to Russia – using her Hungarian passport – several times in 2012 and 2013.

Defendant has no criminal history in the United States. As noted above, however, she is facing criminal charges in Switzerland. Defendant was sued in a civil action in North Carolina a few years ago. She failed to appear and a default was entered against her, but the lawsuit later was dismissed without prejudice.

Gary and Sherrie Gibbs, who were present at the hearing, reside in Litchfield Park, Arizona, and are willing to allow Defendant to live with them if she is released.

**D.   Nature and Seriousness of the Danger to the Community.**

The Court does not view Defendant as a physical danger to anyone. The allegations in the Superseding Indictment and the Declaration of Special Agent

- 4 -

Armstrong suggest, however, that she could be a financial danger to the community. This is not a significant factor in the Court's analysis.

### E. Analysis of the Relevant Factors.

Considering these factors and other relevant information, the Court concludes by a preponderance of the evidence that Defendant should be detained as a flight risk. She is a citizen of Hungary and the United States, and has obtained a Hungarian passport and driver's license in the past. She moved from the United States in 2011, did not return to defend against a civil lawsuit in North Carolina, and travelled to Russia several times on her Hungarian passport, but not back to the United States. She claimed to be caring for her ill mother in Hungary, but lived in a different country. Defendant returned to this country only when extradited by Swiss authorities.

Defendant has no substantial ties to Arizona or the United States. She owns no property here, has no U.S. employment, and has family ties only to a son who lives in California. That tie did not prevent her from moving, apparently permanently, to Europe in 2011. The charges against her suggest that she is experienced in sophisticated international travel. Defendant is facing substantial prison time if convicted on the charges in this case, in addition to any remaining time she must serve in Switzerland. Evidence supporting the indictment suggests that she has been deceptive with many people in the past.

Given these facts, the Court finds that Defendant is a flight risk and that no condition or combination of conditions will reasonably assure her appearance at trial if she is released. 18 U.S.C. § 3142(e).

### IV. Treaty with Switzerland.

Because the Court finds that Defendant should be detained as a flight risk, it need not reach the government's argument that Defendant must be detained under the terms of an extradition treaty between the United States and Switzerland. Doc. 65 at 1-5. The Court finds the government's argument quite compelling, but need not take the time to review legal issues raised by Defendant regarding application of the treaty.

**IT IS ORDERED:**

1. Judge Boyle's order of detention is **affirmed**.

2. Defendant's motion for release from custody (Doc. 61) is **denied**. Excludable delay pursuant to 28 U.S.C. § 3161(h)(1)(D) is found to run from April 3, 2016.

Dated this 27th day of April, 2016.

_____
David G. Campbell
United States District Judge