**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>         Plaintiff,<br>v.<br>Elizabeth Gabriela Szilagyi,<br>         Defendant. | No. CR13-116-01-PHX-DGC<br><br>**ORDER** |

On December 12-14, 2018, the Court held a bench trial on Counts 2 and 7 of the Superseding Indictment. Doc. 13. The government previously dismissed the other 33 counts. *See* Doc. 202. Counts 2 and 7 charge Defendant with wire fraud in violation of 18 U.S.C. § 1343. To prove Defendant guilty of this crime, the government must establish the following elements beyond a reasonable doubt:

> First, Defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts. Deceitful statements or half-truths may constitute false or fraudulent representations;

> Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

> Third, Defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

> Fourth, Defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

Ninth Circuit Model Jury Instruction 8.124; *see also United States v. Woods*, 335 F.3d 993, 997 (9th Cir. 2003).

Counts 2 and 7 concern funds paid to Defendant in connection with her purported efforts to obtain hundreds of millions of dollars in international loans for victims Frank D'Aries and Matt Logan. Frankly, the entire venture was foolhardy.

Victim D'Aries was a homebuilder in Atlanta, Georgia, who had no experience in large developments or substantial financing. He decided to undertake a large commercial and residential development, paid $50,000 for an option on land where the project could be developed, and pursued a $50 million loan. No bank would fund the loan because, in his words, he was "stretched out" on his other real estate projects. So D'Aries attended a conference in Florida, spoke with several individuals, and eventually was referred to Defendant as a possible source of international funding. Curiously, D'Aries was convinced by Defendant's assertion that it was easier to obtain a $100 million loan than a $50 million loan, and hired her to seek $100 million in funding. He somehow also believed that Defendant could obtain a $100 million loan on nothing more than a development plan, with no collateral or security other than some vaguely identified gold bullion that Defendant purportedly could access somewhere. When D'Aries eventually lost his option on the land, he continued to seek the financing through Defendant, apparently thinking that he could obtain the loan even though he had no rights to the land where it would be used for development.

Victim Matt Logan's plan was just as unrealistic. He too was a homebuilder – in the Houston area – and decided to build a plant that would convert cow manure and other garbage into gasoline, would cost some $650 million, and for which he had not acquired the necessary fuel-conversion technology. He apparently believed that he could obtain a $650 million loan before he secured rights to the technology necessary to make his plan

successful (assuming the technology worked in any event). Logan also accepted Defendant's farfetched assertion that she could obtain a $100 million loan on nothing more than his gasoline-plant concept and then transform it into $650 million in a mere three months by use of an unspecified "trading platform."

In short, both victims were pursuing utterly fanciful funding schemes. This does not relieve Defendant of any fraud she committed. As the government has noted, there is no requirement that the scheme be reasonably calculated to deceive only persons of ordinary prudence and comprehension. Doc. 183; *United States v. Ciccone*, 219 F.3d 1078, 1083-84 (9th Cir. 2000). The fraud statutes protect even the most gullible. *Id.* at 1083. But the Court cannot tell from the evidence surrounding this venture whether Defendant was a knowing fraudster or just another daydreamer.

At the beginning of trial, the government said it would prove that Defendant made three misrepresentations to the victims: (1) she had the ability to obtain the loans sought by the victims, (2) the loans would close within specific time periods, and (3) the money transmitted to Defendant by the victims as alleged in Counts 2 and 7 would be used for specific purposes: to register the victims' corporations and obtain legal addresses in Europe. The Court will address each alleged misrepresentation.

**1. Ability to Obtain the Loans.**

Although the financing scheme was unrealistic from the beginning, the government has not proven beyond a reasonable doubt that Defendant knew she lacked the ability to obtain the financing. The government presented no evidence regarding Defendant's education or past business experience. The government confirmed that Defendant maintained an office in Europe and incurred business expenses there, but presented no evidence regarding the nature of that business or why it precluded her from attempting to obtain the financing. The government noted that Defendant claimed to have closed a billion-dollar loan in the past, but presented no evidence that she did not. The government asserts that there is no evidence Defendant ever closed such a loan,

1 which is true, but that argument shifts the burden of proof. Defendant is not required to
2 prove that her statements were true in order to defeat an allegation that they were false.

Both victims testified that they inquired of various sources regarding international financing and ultimately were referred to Defendant. The government presented no evidence to explain why persons referred the victims to Defendant unless she had some involvement in international finance.

Defendant undertook efforts to obtain financing. She arranged for the victims to meet twice with a vice president of a Swiss bank – an individual researched by both victims and found to be legitimate and credible. Defendant held more than six meetings with the victims, had them complete substantial paperwork, traveled back and forth to Europe, travelled to China, and appeared to work on obtaining the financing over the course of several years.

Although Defendant's ability to obtain the loans appears highly dubious, the Court cannot conclude beyond a reasonable doubt that Defendant knew she could not obtain the loans and made the representations to dupe the victims into paying her money. No reasonable person would promise what Defendant did, but the government's evidence did not show that Defendant is reasonable. To the contrary, much of the evidence suggests otherwise. Examples include Defendant's claims that she could quintuple Matt Logan's $100 million on a "trading platform" in three months, her assertion that she could obtain gold bullion in Asia as collateral for the loans and fly it back to Zurich on the plane with her, her recorded telephone rants when talking with Frank D'Aries, and her "Year of the Truth" questionnaire in which she posited a series of odd questions, including questions about the borrower's religion and "Political Persuasion." *See* Doc. 265. Considered as a whole, the evidence suggests that Defendant is eccentric, even if she is competent to stand trial. *See* Doc. 141.

### 2. **Loan Closing Dates.**

The same can be said about the government's second misrepresentation – that the loans would close within a specific period of time. True, Defendant gave the victims

repeated assurances that loans would be funded within 60 days or within a particular month. But the government presented no evidence that Defendant was not actually pursuing the loans or that she did not believe they would close on the dates promised. The government instead relied primarily on the facts that the loans did not close and that the entire enterprise looks deeply suspicious. This is not enough to prove beyond a reasonable doubt that Defendant intentionally misled the victims with respect to when the loans would close. For all the Court can tell, Defendant believed she could close loans on those dates, however irrational that belief may have been.

### 3. Uses of the Money.

The government attempted to prove that Defendant never used money provided by the victims to register their corporations in Europe or to obtain legal addresses there. Supervisory Special Agent Kyle Armstrong testified that he searched databases in Switzerland and Lichtenstein and could not find registrations for the victims' corporations. On cross-examination, however, he testified that he searched only one data base in each country, and that he does not know if there are other databases that might include the information. He also agreed that if there are other data bases, his search was not exhaustive. This testimony does not establish beyond a reasonable doubt that Defendant failed to procure the registrations.

FBI Agent Anna Katherine Shores, a forensic accountant, explained in detail how it appeared that money in two of Defendant's bank accounts (where the victims' money was deposited) was not used to register corporations or obtain legal addresses. But Agent Shores acknowledged that Defendant had eight or nine other accounts and provided no information about any of them. She also admitted that she did not know the ultimate destination of some of the funds in the two accounts she did review. This is not proof beyond a reasonable doubt that Defendant failed to procure the registrations and legal addresses.

/ / /

/ / /

**4. Summary.**

If the government's burden of proof was a mere preponderance of the evidence, the Court would agree with the charges in Count 2 and 7. This case is filled with red flags and suspicious activity. But the government must prove beyond a reasonable doubt that Defendant knowingly engaged in a scheme to defraud. *Woods*, 335 F.3d at 997. The evidence presented at trial does not meet this high threshold.

The Court acknowledges that reasonable minds could see the evidence differently. Another factfinder might well conclude that the government has proved its case. But the undersigned has too many doubts about Defendant's state of mind to find that she knowingly engaged in a scheme to defraud.

**IT IS ORDERED** that judgment is entered in favor of Defendant Elizabeth Szilagyi on Counts 2 and 7. The Clerk is directed to enter judgment in her favor and terminate this action.

Dated this 18th day of December, 2018.

David G. Campbell
Senior United States District Judge